**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-23898-CIV-SCOLA/TORRES**

DESIGNS FOR HEALTH, INC.,
a Florida Corporation,

      Plaintiff,

v.                                                                                      **JURY TRIAL REQUESTED**

FRUITFUL LONGEVITY, INC. d/b/a
HEALTH POWERHOUSE, a Florida Corporation,
YEP TOTAL NUTRITION, INC., a Florida
Corporation; ERICA L. PAQUETTE, an Individual;
YERANDY "ANDY" E. PALENZUELA,
an Individual; ALEKSEJS LEAL, an Individual;
PABLO FUENTES, an Individual; PILAR PEREIRA,
an Individual; MARYSEL GOIRIZ, an Individual;
WESTON FINN, an Individual; TOTAL PRO
WELLNESS, INC., a Florida Corporation; WAY OF LIFE, LLC,
a Florida Limited Liability Company; OLIVER ANAM, RPh,
an Individual; JOSEPHINE EGBEBIKE, RPh, an Individual;
IFY EGBEBIKE, an Individual; AMOS OKEGBOLA, RPh, an
Individual; MILES REID, an individual; ZACH
GLOSSERMAN, an Individual; ELSA RIVERO, RN,
an Individual; OLUTOLA SOBANDE, RPh, an Individual;
IRINA RAMOS ARROCHA, an individual; ADESOJI
ADEWUMI, RPh, an individual; AYMAN DAABOUL, RPh,
an individual; and JESUS RODRIGUEZ DE LA TORRE, M.D.;

      Defendants.

_____/

## AMENDED COMPLAINT FOR COUNTERFEITING UNDER 15 U.S.C. §1116(d)(1)(B), WILLFUL TRADEMARK INFRINGEMENT AND TRADE DRESS INFRINGEMENT

      Plaintiff DESIGNS FOR HEALTH, INC. ("DFH") hereby sues Defendants FRUITFUL

LONGEVITY, INC. d/b/a HEALTH POWERHOUSE ("Health Powerhouse"), YEP TOTAL

NUTRITION, INC. ("Total Nutrition"), and their owners ERICA L. PAQUETTE ("Paquette")

and YERANDY "ANDY" E. PALENZUELA ("Palenzuela"), in addition to ALEKSEJS LEAL

("Leal"), PABLO FUENTES ("Fuentes"), PILAR PEREIRA ("Pereira"), MARYSEL GOIRIZ

("Goiriz"), WESTON FINN ("Finn"), TOTAL PRO WELLNESS, INC. ("TP Wellness"), WAY OF LIFE, LLC ("Way of Life") for counterfeiting under 15 U.S.C. §1116(d)(1)(B), for willful infringement of three registered trademarks under 15 U.S.C. §1114(1), trade dress infringement under 15 U.S.C. §1125(a), and unfair competition under Florida common law (collectively, the "Enterprise Defendants"); and sues qualified health practitioners ("QHPs")_ who previously contracted with DFH to purchase DFH products (and who later improperly sold such products to resellers Health Powerhouse and/or TP Nutrition): OLIVER ANAM, RPh, ("Anam"); JOSEPHINE EGBEBIKE, RPh, ("J. Egbebike"); IFY EGBEBIKE ("I. Egebike"); AMOS OKEGBOLA, RPh, ("Okegbola"), MILES REID ("REID"); ZACH GLOSSERMAN ("Glosserman"), ELSA RIVERO, RN ("Rivero"), OLUTOLA SOBANDE, RPh ("Sobande"), IRINA RAMOS ARROCHA ("Arrocha"), ADESOJI ADEWUMI, RPh ("Adewumi"), AYMAN DAABOUL, RPh ("Daaboul"), JESUS RODRIGUEZ DE LA TORRE, M.D. ("De La Torre") (collectively, the "QHP Defendants").[1]

In support, DFH provides the following detailed allegations:

## THE PARTIES

1.      DFH is a Florida corporation maintaining an address at 6 Commerce Boulevard, Palm Coast, Florida 32164, as well as laboratory and distribution facilities at 980 South Street, Suffield, Connecticut 06078.  DFH formulates, synthesizes, prepares, packages, and produces a comprehensive line of over 300 high-quality nutraceutical, nutritional and dietary supplements, and natural healthy products marketed and advertised under the well-known and highly distinctive **DESIGNS FOR HEALTH** brand for sale through registered health care providers, via direct

---

[1] A "QHP" as used in this action and among the parties means a qualified health practitioner, such a doctor, pharmacist, or physical therapist, who has been approved by DFH for an account to purchase, and certain rights to sell, the products of DFH.

online sales on DFH's comprehensive e-portal www.DesignsForHealth.com (the "DFH Website"), as well as through DFH's authorized and exclusive Amazon.com seller (the "DFH Amazon Store").

2.     As a line of dietary and health products designed for professional use, DFH is primarily sold through health care providers typically after an end-consumer visits such a provider for purposes of addressing overall health, nutritional needs and well-being.  As such, DFH is distributed through a carefully selected network of highly regarded health professionals (the "DFH Network") – and is not available through third-party brick-and-mortar retail stores.  In order to aide end-consumers – once they have met with a health care provider within the DFH Network who has been counseled as to proper selection of DFH offerings – in reordering their dietary supplements, DFH makes their comprehensive line of supplements available via the DFH Amazon Store as well as offers direct on-line sales via the DFH Website.

3.     Health Powerhouse is a corporation formed and organized under the laws of the State of Florida on or about July 15, 2014, listing as of its March 14, 2017 annual report an address at 9049 SW 170 Place, Miami, Florida 33196 – which is a single family detached home jointly owned by Paquette and Palenzuela in the Kendall Commons neighborhood.  Previously, Health Powerhouse has listed its place of business as (a) 2140 SW 3rd Avenue, Apartment 6F, Miami, Florida 33129 (original address as of its 2014 incorporation), and (b) 350 South Miami Ave., Unit 1106, Miami, Florida 33130 (address provided in both its 2015 and 2016 Annual Reports with the State of Florida).

4.     Health Powerhouse is owned and operated by Paquette, who is the moving force of the business.   Health Powerhouse, at all times relevant to this action, has been solely managed, directed and operated solely by Palenzuela.

5.      Health Powerhouse did not, and does not, have sufficient funding to assume responsibility for its foreseeable and actual liabilities.  Upon information and belief, since the time of its creation, now, and at all times relevant to this Complaint, Health Powerhouse was, has been, and now is undercapitalized.  Since the time of its creation, now, and at all times relevant to this Complaint, Health Powerhouse has failed to observe corporate formalities required by Florida law.

6.      Health Powerhouse, at all times relevant to this action, has previously maintained a comprehensive storefront on Amazon (the "Health Powerhouse Storefront") which has sold (and/or is selling) a variety of third-party sourced nutraceuticals and/or dietary supplements:



*See,* **Exhibit A.**

7.      As listed above, and at all times relevant to the allegations set forth herein, one of the principal brands which the Health Powerhouse Storefront has listed, marketed, advertised, promoted, offered for resale and ultimately resold, has been DFH's distinctive line of nutritional supplements.  However, such actions are without authorization, permission, authority, license or right from DFH as DFH does not allow third-party resellers to offer DFH products on-line for sale.

8.      Total Nutrition is a corporation formed and organized under the laws of the State of Florida in or about April 2012, and currently maintains its principal place of business at 900 South Miami Ave., Suite 124, Miami, Florida 33130 – which is located in the Mary Brickell

Village shops in downtown Miami.  Between its May 2012 incorporation until May 2015, Total

Nutrition listed its place of business as 2140 SW 3rd Ave., Apartment 6F, Miami, Florida 33129

(which is the same address as Health Powerhouse listed when it was incorporated in July 2014).

At all times material and relevant to the allegations contained herein, Total Nutrition has been

jointly owned by Paquette (its President) and Palenzuela (its Vice President).

9.      Total Nutrition warehouses certain inventory of dietary supplements and related

health products, including at its business location at 900 South Miami Ave., Suite 124, Miami,

Florida 33130.  Upon information and belief, Total Nutrition has warehoused dietary supplements

which have included the **DESIGNS FOR HEALTH** mark – for the purpose and intent to

distribute, offer for sale, market, advertise and promote either directly or indirectly on behalf of

Health Powerhouse.  Upon further information and belief, Total Nutrition has offered for sale DFH

dietary supplements (which includes DFH's three implicated Trademarks-in-suit and/or product

packaging trade dress) which it had sourced (or had intended to be sourced) from Health

Powerhouse.

10.     Upon information and belief, Total Nutrition has assisted in providing credit and/or

financing (either directly or indirectly) through its relationships with third-party credit companies

(including but not limited to American Express) for purposes of Health Powerhouse obtaining

sufficient financing to obtain inventory for sale (from either TP Wellness and/or directly from the

QHP Defendants) via Amazon.com – including the **DESIGNS FOR HEALTH** brand.

11.     Total Nutrition did not, and does not, have sufficient funding to assume

responsibility for its foreseeable and actual liabilities.  Upon information and belief, since the time

of its creation, now, and at all times relevant to this Complaint, Total Nutrition was, has been, and

now is undercapitalized.  Upon further information and belief, since the time of its creation, now,

and at all times relevant to this Complaint, Total Nutrition has failed to observe corporate formalities required by Florida law.

12.     Paquette is an individual living and residing at 9049 SW 170 Place, Miami, Florida 33196.  Paquette is the president and owner of Health Powerhouse (as well as the president and co-owner of Total Nutrition).  Moreover, Paquette is the moving force behind both Health Powerhouse and Total Nutrition's improper actions addressed herein.  Upon information and belief, Paquette has allowed, approved, conceded, or agreed to offer for sale and/or sell, without authorization, dietary supplements under the name **DESIGNS FOR HEALTH**, without the permission, license, or authority from DFH.  Upon information and belief, Paquette has approved, conceded or agreed to allow Total Nutrition to offer for sale (and/or market) dietary supplements under the name **DESIGNS FOR HEALTH** and/or allow its facilities to be used to warehouse dietary supplements under the Trademarks-in-Suit for later sale by Health Powerhouse.

13.     As such, Paquette dominates and controls both Health Powerhouse and Total Nutrition such that her personal actions are confused with corporate actions.

14.     Both Health Powerhouse and Total Nutrition are the "alter ego" of Paquette, as the personal affairs of Paquette, as owner and key officer of both companies, can be confused and/or are the same as the business affairs of Health Powerhouse and Total Nutrition.  Upon further information and belief, Paquette has disregarded both Health Powerhouse and Total Nutrition as corporate entities and/or has taken action to confuse personal affairs with Health Powerhouse and Total Nutrition's affairs.

15.     Palenzuela is an individual living and residing at 9049 SW 170 Place, Miami, Florida 33196.  Palenzuela is the vice president and co-owner of Total Nutrition, the day-to-day operator of Health Powerhouse as well as the husband of Paquette.  In addition, Palenzuela is an

owner, officer and director of both TP Wellness as well as Way of Life.  Palenzuela has managed and overseen the day-to-day operations of both TP Wellness and Health Powerhouse, and helps warehouse, store, package, ship, and process their online orders and sales via the web as well as Amazon.com.  Moreover, Palenzuela has allowed, approved, conceded, and/or agreed to sell, without authorization or approval, dietary supplements under the name **DESIGNS FOR HEALTH** through Total Nutrition's Mary Brickell Village brick-and-mortar location (as well as warehouse such supplements under that name at Total Nutrition's storage area).

16.     As such, Palenzuela dominates and controls both Health Powerhouse and Total Nutrition such that his personal actions are confused with corporate actions.

17.     TP Wellness, Health Powerhouse, Total Nutrition and Way of Life are the "alter ego" of Palenzuela, as the personal affairs of Palenzuela, as owner and key officer of all four companies, can be confused and/or are the same as the business affairs of TP Wellness, Health Powerhouse, Total Nutrition and Way of Life.  Upon further information and belief, Palenzuela has disregarded TP Wellness, Health Powerhouse, Total Nutrition and Way of Life as corporate entities and/or has taken action to confuse personal affairs with TP Wellness, Health Powerhouse, Total Nutrition and Way of Life.

18.     TP Wellness is a Florida corporation with its principal place of business at 14271 SW 120th St. Unit 104, Miami, Florida 33186. It is a reseller of dietary and health supplements that has, at times pertinent to this lawsuit, sold DFH products, including previously through Amazon.com and its direct-sales website, www.totalprowellness.com (the "Total Prowellness Website").  The company has employees, operations, and a warehouse in Miami, Florida.   TP Wellness is owned, directed, operated and managed by Palenzuela, Leal, Fuentes, Goiriz and Pereira.

19.     As provided for in greater detail herein, TP Wellness has assisted in procuring, sourcing, and obtaining DFH products from the certain QHPs, including but not limited to the QHP Defendants for the specific purpose of reselling and distributing the DFH products on-line (through Amazon.com as well through various websites including the Total Prowellness Website). Additionally, TP Wellness has engaged in the unauthorized and unlawful logistical support (warehousing, distribution, and forwarding) of unauthorized and unlicensed DFH products for purpose of resale to various resellers and distributors including but not limited to Fruitful Longevity, Total Nutrition, Palenzuela and/or Paquette.

20.     Upon information and belief, TP Wellness has provided certain financing, purchasing and/or capital to assist Fruitful Longevity, Total Nutrition, Palenzuela and/or Paquette in acquiring certain inventory from QHPs, including but not limited to the Defendant QHPs, for the purpose of sourcing DFH products for the purpose of reselling and distribution on-line.

21.     Leal is an individual working, living and/or residing in Miami-Dade County, Florida.  At all times relevant to this action, Leal has been an owner, manager, and director - as well as acted as the Corporate Secretary of TP Wellness. Under these roles and duties, Leal has been a moving force behind TP Wellness, and has engaged in various acts (including management and oversight) for purposes of providing warehousing, distributing and forwarding of unauthorized and unlicensed DFH products.   Upon information and belief, these acts have specifically included the location, identification and negotiation with various QHPs, including but not limited to one or more of the Defendant QHPs, for the purposes of sourcing, acquiring and/or obtaining DFH products.   Upon further information and belief, these acts have further included certain financing, purchasing and/or capital to assist in acquiring DFH products for later resale and distribution of DFH products online.

22.     Fuentes is an individual working, living and/or residing in Miami-Dade County, Florida.  At all times relevant to this action, Fuentes has been an owner, manager and director – as as well as acted as the President of TP Wellness.  In addition, at all times relevant to this action, Fuentes has been associated with and served as an authorized member of Way of Life.  Under these roles and duties, Fuentes has been a moving force behind TP Wellness, and has engaged in various acts (including management and oversight) for purposes of providing warehousing, distributing and forwarding of unauthorized and unlicensed DFH products.

23.     Pereira is an individual working, living and/or residing in Miami-Dade County, Florida.  At all times relevant to this action, Pereira has been an owner, manager and director – as well as the Vice President of TP Wellness.  Under these roles and duties, Leal has been a moving force behind TP Wellness, and has engaged in various acts (including management and oversight) for purposes of providing warehousing, distributing and forwarding of unauthorized and unlicensed DFH products.

24.     Goiriz is an individual working at 5246 SW 8th Street, Coral Gables, Florida 33134 as well as residing at 254 San Sebastian Avenue, Coral Gables, Florida 33134.  At all times relevant to this action, Goiriz has been an owner and served as an officer and director of TP Wellness.   As a licensed Physical Therapist with the State of Florida Department of Health, Goiriz previously was able to qualify as a "qualified healthcare practitioner," which became a QHP with DFH for the specific and directed purpose of improperly acquiring DFH products from DFH.

25.     Goiriz specifically became a QHP for the designated purpose of improperly sourcing DFH products to assist TP Wellness in acquiring unauthorized and improper DFH products for purpose of warehouse and/or distribution online.  Upon information and belief, Goiriz also improperly assisted Fruitful Longevity, Total Nutrition, Palenzuela and/or Paquette in

improperly acquiring DFH products for resale and/or distribution online, including on Amazon.com.

26.     Way of Life is a Florida limited liability company with its principal place of business at 9049 SW 170 Place, Miami, FL 33196.   Formed and organized in January 2016, Way of Life is an affiliate and/or related company of TP Wellness and shares many of the same owners, officers and/or directors, including: Leal, Palenzuela, and Fuentes.  In addition, Way of Life is also owned and/or operated by Finn.

27.     Way of Life makes and/or offers various complementary health products and/or related items, which TP Wellness and/or Health Powerhouse bundles with various dietary supplements (including DFH Products) for resale and distribution on-line including through Amazon.com.   Upon information and belief, Way of Life operates to create joint promotional items that can be combined and/or offered with dietary supplements (including DFH Products) to advance sales Fruitful Longevity, Total Nutrition, Palenzuela and/or Paquette.

28.     Finn is an authorized representative and authorized member of Way of Life who reports a Miami, Florida, place of business to the Florida Secretary of State.

29.     Anam is a resident of Florida who works in Tampa, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

30.     Anam previously entered into a business arrangement with the Enterprise Defendants where Anam would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Anam's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were

shipped to Anam and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Anam when placing orders.  Once acquired from Anam, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Anam's written obligations with DFH as a QHP.

31.     J. Egbebike is a resident of Florida who works in Pensacola, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

32.     J. Egbebike previously entered into a business arrangement with the Enterprise Defendants where J. Egbebike would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain J. Egbebike's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to J. Egbebike and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually J. Egbebike when placing orders.  Once acquired from J. Egbebike, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of J. Egbebike's written obligations with DFH as a QHP.

33.     I. Egbebike is a resident of Florida who works in Pensacola, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

34.     I. Egbebike previously entered into a business arrangement with the Enterprise Defendants where I. Egbebike would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain I. Egbebike's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise

Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to I. Egbebike and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually I. Egbebike when placing orders. Once acquired from I. Egbebike, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of I. Egbebike's written obligations with DFH as a QHP.

35.     Okegbola is a resident of Florida who works in Fort Lauderdale, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

36.     Okegbola previously entered into a business arrangement with the Enterprise Defendants where Okegbola would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Okegbola's professional licensure/credentials to apply with DFH to obtain QHP login credentials. Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Okegbola and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Okegbola when placing orders. Once acquired from Okegbola, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Okegbola's written obligations with DFH as a QHP.

37.     Reid is a resident of California, who works in Los Angeles, California, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

38.     Reid previously entered into a business arrangement with the Enterprise Defendants where Reid would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Reid's professional licensure/credentials to apply with DFH to obtain QHP login credentials. Upon acquiring these QHP login credentials (and e-

signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Reid and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Reid when placing orders.  Once acquired from Reid, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Reid's written obligations with DFH as a QHP.

39.     Glosserman is a resident of California who works in Los Angeles, California, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

40.     Glosserman previously entered into a business arrangement with the Enterprise Defendants where Glosserman would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Gloserman's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Glosserman and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Glosserman when placing orders.  Once acquired from Glosserman, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Glosserman's written obligations with DFH as a QHP.

41.     Rivero is a resident of Florida who works in Miami, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

42.     Rivero previously entered into a business arrangement with the Enterprise Defendants where Rivero would be provided between $500.00 to $1,000.00 in monthly

compensation, which in turn the Enterprise Defendants would obtain Rivero's professional licensure/credentials to apply with DFH to obtain QHP login credentials. Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Rivero and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Rivero when placing orders. Once acquired from Rivero, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Rivero's written obligations with DFH as a QHP.

43.    Sobande is a resident of Florida who works in Miami, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

44.    Sobande previously entered into a business arrangement with the Enterprise Defendants where Sobande would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Sobande's professional licensure/credentials to apply with DFH to obtain QHP login credentials. Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Sobande and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Sobande when placing orders. Once acquired from Sobande, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Sobande's written obligations with DFH as a QHP.

45.    Arrocha is a resident of Florida who works in Olympia Heights, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

46.    Arrocha previously entered into a business arrangement with the Enterprise

Defendants where Arrocha would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Arrocha's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Arrocha and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Arrocha when placing orders.  Once acquired from Arrocha, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Arrocha's written obligations with DFH as a QHP.

47.     Adewumi is a resident of Florida who works in Miami, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

48.     Adewumi previously entered into a business arrangement with the Enterprise Defendants where Adewumi would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Adewumi's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Adewumi and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Adewumi when placing orders.  Once acquired from Adewumi, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Adewumi's written obligations with DFH as a QHP.

49.     Daaboul is a resident of Florida who works in Miami, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

50.     Daaboul previously entered into a business arrangement with the Enterprise Defendants where Daaboul would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain Daaboul's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to Daaboul and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually Daaboul when placing orders.  Once acquired from Daaboul, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of Daaboul's written obligations with DFH as a QHP.

51.     De La Torre is a resident of Florida who works in Miami, Florida, contracted with DFH as a QHP and furnished DFH products to Enterprise Defendants in this district.

52.     De La Torre previously entered into a business arrangement with the Enterprise Defendants where De La Torre would be provided between $500.00 to $1,000.00 in monthly compensation, which in turn the Enterprise Defendants would obtain De La Torre's professional licensure/credentials to apply with DFH to obtain QHP login credentials.  Upon acquiring these QHP login credentials (and e-signing certain DFH contracts in the process), the Enterprise Defendants would then directly log into the DFH portal to order certain DFH products (which were shipped to De La Torre and then sent to the Enterprise Defendants in Miami) – all under the suggestion that the Enterprise Defendants were actually De La Torre when placing orders.  Once acquired from De La Torre, the Enterprise Defendants would resell or distribute the DFH products in knowing violation of De La Torre's written obligations with DFH as a QHP.

## JURISDICTION AND VENUE

16

53.     This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), by virtue of 15 U.S.C. § 1051 *et seq.,* in that the case arises out of § 43(a) of the Lanham Act for trademark infringement and supplemental jurisdiction under 28 U.S.C. §§ 1367(a) and 1338 (a),(b).

54.     Venue is proper, *inter alia,* under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Furthermore, Venue is proper as Enterprise Defendants maintain their sole locations within this Judicial District – as well as are engaged in actions and omissions that are creating acts of trademark infringement and/or unfair competition within this Judicial District.

55.     This Court has personal jurisdiction over the defendants in this matter as they are either citizens and residents of Florida, have their principal places of business and are incorporated in Florida, or, in the case of the QHP Defendants, both breached a contract in Florida and committed a tort in Florida.

## GENERAL ALLEGATIONS

### Designs for Health, Inc.'s History and its Associated Trademarks

56.     Plaintiff DFH is in the business of formulating, making, producing and selling a line of high quality nutraceutical, dietary and nutritional supplements, and natural health products marketed under the well-regarded and distinctive **DESIGNS FOR HEALTH** trade name, and owns several related federally registered trademarks in connection with its business.

57.     DFH was redomesticated to Florida as a Florida Corporation in late March 2014, which previously was Designs for Health, Inc., a Connecticut Corporation ("DFHC").

58.     The **DESIGNS FOR HEALTH** brand originated with Diet, Inc., which began operating in 1989, by offering nutrition counseling and education services.  Diet, Inc. was

originally formed as a Connecticut Corporation located in Trumbull, Connecticut. Two years after becoming an on-going concern, Diet, Inc. filed, on March 13, 1991, an application before the United States Patent and Trademark ("USPTO") for the mark **DESIGNS FOR HEALTH** in International Class 42. That application ultimately issued as Trademark Registration No. 1,699,973 for "weight loss and nutritional counseling services" and lists a first use in commerce date of March 1991.

59. Incorporated on November 12, 1996, as a Connecticut corporation, DFHC was the successor-in-interest to Diet, Inc. Diet, Inc. assigned Trademark Registration No. 1,699,973 to DFHC on March 24, 1998.

60. Trademark Registration No. 1,699,973 is now incontestable under 15 U.S.C. §1065.

61. A true and correct copy of Trademark Registration No. 1,699,973 is attached as **Exhibit B** hereto.

62. Building on Diet, Inc.'s immediate and considerable success in nutritional counseling, DFHC developed a professionals-only line of nutritional and dietary supplements under the trade name **DESIGN FOR HEALTH**. Since at least as early as December 1997, DFHC began using the trade name **DESIGN FOR HEALTH** to market its nutritional and dietary supplement products and has continuously used the highly distinctive trademark on product labels and marketing materials in connection with its line of products ("DFH Products").

63. On February 27, 2009, DFHC filed a Section 1(a) application before the USPTO for the mark **DESIGNS FOR HEALTH** in International Class 5 for "dietary supplements for human consumption" listing a first use in commerce date of December 1997. That application issued as Trademark Registration No. 3,666,757 on August 11, 2009.

64.     On November 6, 2014, DFH filed a Combined Sections 8 and 15 Affidavit before the USPTO for Trademark Registration No. 3,666,757.  As such, this registration is now incontestable under 15 U.S.C. §1065.

65.     A true and correct copy of Trademark Registration No. 3,666,757 is attached as **Exhibit C** hereto.

66.     On December 29, 2011, DFHC filed a Section 1(a) application before the USPTO for the following stylized logo in International Class 5 for "dietary supplements for human consumption" listing a first use in commerce date of September 2011:



That application issued Trademark Registration No. 4,190,466 on August 14, 2012, and is now incontestable under 15 U.S.C. § 1065.

67.     A true and correct copy of Trademark Registration No. 4,190,466 is attached as **Exhibit D** hereto.

68.     On April 31, 2014, after domesticating DFH with the State of Florida, DFHC assigned any and all rights to the following three registrations to DFH (herein collectively the "Trademarks-in-Suit") and duly recorded the same with the USPTO:

| Mark | Registration No. | Issuance Date | International Class/Description | 15 U.S.C. §1065 Status |
|------|------------------|---------------|-------------------------------|------------------------|
| **DESIGNS FOR HEALTH** | 1,699,973 | July 7, 1992 | Class 42: weight loss and nutrition counseling services. | Incontestable |
| **DESIGNS** | 3,666,757 | August 11, 2009 | Class 5:  Dietary | Incontestable |

| FOR HEALTH | | | supplements for human consumption. | |
|---|---|---|---|---|
| | 4,190,466 | August 14, 2012 | Class 5: Dietary supplements for human consumption. | Incontestable |

69.    Based upon DFH's considerable efforts to market and advertise the DFH Products, the company has created considerable goodwill and repute regarding the foregoing dietary supplements, such that the marks are not only incontestable but are likewise strong.

70.    Examples of DFH's marketing efforts under the Trademarks-in-Suit, include its Facebook page at https://www.facebook.com/DesignsForHealth/ (the "DFH Facebook Page") which currently has over 13,100+ followers and over 13,308 likes:



*See,* **Exhibit E**

71.    A second example of DFH's expansive social media presence include its Twitter

feed – established in March 2010 – at https://twitter.com/Designs4Health (handle: @Designs4Health) which has 4,332 followers, and 5,234 tweets (the "DFH Twitter Feed"):



*See,* **Exhibit F.**

72.     As such, for over a quarter century, DFH (as well as its predecessors-in-interest Diet, Inc. and DFHC discussed above), have spent a considerable amount of time, energy and financial resources to actively advertise, market and promote its line of high-quality dietary supplements under the three incontestable Trademarks-in-Suit.

73.     As shown above, these marketing efforts have included use of the DFH Website, the DFH Twitter Feed, and the DFH Facebook Page, as well as traditional marketing efforts.

74.     Since December 1, 1999, DFH has had grossed revenues from sales of its DFH Products totaling in excess of four hundred million dollars ($400,000,000).

75.     DFH's sales have been substantial and continue to rise.

**The DFH Trade Dress**

76.     In addition to the three aforementioned Trademarks-in-Suit, DFH has used in interstate commerce since approximately late 2011 the following inherently distinctive product packaging in marketing, advertising, promoting, offering for sale and selling its line of DFH Products (hereinafter the "DFH Trade Dress"):



77.     As shown above, the DFH Trade Dress includes a unique non-functional sleek bottle shape, the use of three horizontal colored bands (having similar shades of the same color) around the bottom circumference of the bottle proximate the bottom of the bottle, wherein the middle band reads "*DIETARY SUPPLEMENT FOR PROFESSIONAL USE ONLY*" while the bottom band reads "*Vegetarian Capsules*" with the appropriate number of units/capsules bottled. Moreover, immediately above the top band (which does not contain any writing) is the trade name of the underlying product, *i.e., Twice Daily Multi*<sup>TM</sup>, *Thyroid Synergy.*<sup>TM</sup> *Inflammatone*<sup>TM</sup> among other trade names.

78.     Through DFH's considerable efforts in marketing, promoting and disseminating DFH Products over the last six years that feature the above-referenced unique attributes, the DFH Trade Dress has achieved considerable trade dress rights due to its source identifying nature.

79.     Based upon the significant amount of sales achieved during the last six years by DFH, as well as the large amount of advertising, marketing and promotion, both on-line and through traditional means, that promoted the referenced attributes, DFH has created considerable goodwill and recognition based upon the DFH Trade Dress.

80.     The DFH Trade Dress is distinctive based upon being inherently distinctive product packaging, as well as how it has independently achieved secondary meaning due to its notoriety and strength.

### The DFH Products Marketed under the DFH Trade Dress and Trademarks-in-Suit

81.     At all times relevant herein, DFH Products marketed under the DFH Trade Dress and the Trademarks-in-Suit have been formulated and synthesized by recommendation and under the supervision of Qualified Healthcare Practitioners ("QHPs"), and are sold to consumers through a restricted network of registered QHPs in the United States (*i.e.,* the DHF Network).

82.     QHPs are health practitioners who directly provide health counseling services to individuals seeking dietary supplements and related health products.  To meet the qualification to become a QHP, DFH requires applicants to enter into an RxDFHend Agreement and submit a copy of the practitioner's state license, professional degree certificate or diploma for qualification.

83.     DFH provides educational training and promotional materials to those QHPs in the DFH Network to promote and sell DFH Products, as well as educate such QHPs on the administration and proper selection of such products for individual consumers.

84.     DFH primarily sells its DFH Products to consumers through resellers within the DFH Network who are QHPs.  To join the DFH Network, QHPs enter into an RxDFHend Agreement with DFH in order to obtain wholesale pricing for distribution to their patients.  A copy of the RxDFHend Agreement is attached as **Exhibit G.**

85.     DFH has advertised and promoted its DFH Products through its distinctive DFH Trade Dress and the Trademarks-in-Suit through various advertising channels including traditional marketing such as printed brochures and flyers, magazine advertisements, and distributors' catalogs.   Attached as **Exhibit H** is a copy of a printed brochure used in connection with the promotion and distribution of DFH's Arthroben® medical food product.

86.     In addition to these traditional marketing efforts, DFH has also marketed and promoted the DFH Products through the DFH Website, the DFH Facebook Page, as well as the DFH Twitter Feed, amongst other social media.   The DFH Website includes an expansive on-line library of its various product offerings, as well as related product information.   The DFH Website took considerable time and financial investment to create as well as to now maintain.

87.     In addition to these on-line and traditional marketing efforts, DFH has promoted and marketed the DFH Products featuring the DFH Trade Dress and the Trademarks-in-Suit at trade shows, seminars, events and interactive teleconferences that focused on a host of clinically relevant topics to educate QHPs and promote DFH Products.   Attached as **Exhibit I** is a copy of a printed brochure for a program titled "Core Concepts for Nutritional Medicine" organized by DFH in San Diego, California on October 5, 2013.

88.     The DFH Website and the DFH Amazon Store allows consumers to source products from DFH.

89.     DFH does not allow, permit, authorize or endorse any unauthorized third-party to sell DFH Products through Amazon.com.   Put simply, only DHF's authorized agent operating the DFH Amazon Store is authorized to sell DFH Products on Amazon.com – and no other DFH Network member is authorized do to so.

90.     Based upon the foregoing, DFH has achieved great commercial success and sales

of its DFH Products bearing the DFH Trade Dress and the Trademarks-in-Suit.

91.     As a result of the unique and distinctive nature of the DFH Trade Dress and the Trademarks-in-Suit and the extensive display, sales, promotion and use by DFH, both the DFH Trade Dress and the Trademarks-in-Suit have become associated with DFH in the minds of relevant consumers and carry enormous goodwill for DFH.

92.     DFH's trademarks and distinctive product packaging distinguishes DFH's dietary supplement products from the same or similar goods of others, and is indicative to the trade and to consumers that dietary and nutritional supplement goods bearing the Trademarks-in-Suit and the DFH Trade Dress originate from, or are sponsored or approved by, DFH.

93.     DFH is the exclusive owner of the Trademarks-in-Suit and the related DFH Trade Dress used in connection with the DFH Products.  Trademarks-in-Suit and the related DFH Trade Dress carry considerable goodwill.

94.     DFH has not licensed nor granted to the Enterprise Defendants any authority, permission, or other rights to use, offer to sell, or sell a dietary supplement product using the DFH Mark.

95.     None of Enterprise Defendants are authorized QHPs and/or associated with any of DFH's QHPs – and likewise none have signed (or sought to sign) the RxDFHend Agreement (**Exhibit G).** Goiriz was, previously, party to a RxDFHend Agreement and therefore authorized to purchase DFH products and resell them.

**Formation and Purpose of Total Pro Wellness**

96.     TP Wellness was formed and organized in Florida in January 2014, for the specific purpose of obtaining and acquiring certain QHP recommended dietary supplements, for later sale on-line to end-consumers.

97.     Prior to early 2014, Palenzuela, Leal, Pereira, and Fuentes were previously all friends and/or acquaintances (including at Florida Gulf Coast University) who wanted to form a dietary and nutritional health store business.

98.     The goal of the four was to acquire highly desired dietary and nutritional supplements for later sale on-line (both through direct website sales, as well as e-commerce sites such as Amazon.com).   More specifically, Palenzuela, Leal, Pereira, and Fuentes recognized that if they could source difficult to obtain (and sought after) nutritional products, that there would be considerable financial benefits (despite the fact that they would be improperly sourcing the underlying products).

99.     In forming the Total Pro Wellness business, it became apparent to Palenzuela, Leal, Pereira, and Fuentes that they would need some form of QHP to order and/or source certain desired dietary and nutritional supplements – including from DFH.   Therefore, they solicited the help of a Coral Gables based licensed Physical Therapist – Goiriz – in order to obtain applicable licensure credentials to purchase and/or acquire various QHP products, including DFH.

100.     The arrangement was simple, Goiriz would be a 1/5th owner of TP Wellness obtain dividends of the venture, simply by providing her licensure credentials to Palenzuela, Leal, Pereira, and Fuentes (with little if any assistance in running the business).

101.     With that agreement in hand, Palenzuela, Leal, Pereira, and Fuentes worked to acquire warehouse space in Miami to store dietary supplements.  In addition, the four worked to create and launch a comprehensive dietary supplement store – www.TotalProWellness.com - which would feature DFH products as one of the ten primary brands to be sold by TP Wellness:



102.    In marketing and promoting the DFH Products as one of its ten primary brands, TP

Wellness specifically suggested to consumers on www.TotalProWellness.com that in ordering such

dietary supplements, that the company had a "*dedicated pharmacist*" available to address any

questions regarding DFH products:



103.    However, at no time has TP Wellness ever had any "*dedicated pharmacist*"

available to discuss with customers interested in purchasing DFH products.  On the contrary, this

was a blatant misrepresentation designed to lure individuals into purchasing DFH products from

TP Wellness – as Palenzuela, Leal, Pereira, and Fuentes all knew that Goiriz was not a pharmacist.

104.    Palenzuela has admitted that the above advertising is "*factually misleading*" on the

part of TP Wellness regarding the on-line sale of DFH products.

105.    In addition to its sales on [www.TotalProWellness](www.TotalProWellness), TP Wellness also similar

advertised, marketed, and promoted DFH Products on Amazon.com (all through acquisition of

unauthorized DFH products through Goiriz's professional physical therapist credentials).

106.    In making such sales online through [www.TotalProWellness.com](www.TotalProWellness.com) and well as

Amazon.com, all such products were sourced through use of Goiriz's physical therapy credentials.

107.    Palenzuela, Leal, Pereira, and Fuentes agreed to compensate Goiriz merely for

supplying such credentials to order products (including DFH products).  In doing so, Goiriz never

addressed with any customer who ordered from TP Wellness (prior to that customer ordering DFH

products) any dietary and/or health needs or whether DFH products should be consumed.

108.    Moreover, Goiriz was not involved in the actual ordering of DFH products, rather,

it was simply Palenzuela, Leal, Pereira, and Fuentes using her professional licensure credentials

to purchase various DFH products that eventually sold on-line.  Put simply, Goiriz was not

involved in the day-to-day operations of TP Wellness - much less providing consultations to TP

Wellness customers prior to ordering of DFH products.

109.    TP Wellness is a reseller and distributor of dietary supplements.   However, QHPs

are strictly prohibited by DFH from acquiring DFH products for the purpose of sale to resellers

and/or distributors.   Accordingly, by allowing Palenzuela, Leal, Pereira, and Fuentes certain

professional credentials, Goiriz was in direct violation of specific clear and unambiguous

contractual duties and obligations with DFH.

110.    TP Wellness was actively engaged as a reseller of DFH products in 2014 and 2015 on www.TotalProWellness.com.

111.    Upon information and belief, TP Wellness only offered DFH products on Amazon.com between January to July 2014 (*ie*, prior to the formation and launch of Fruitful Longevity).

112.    TP Wellness stopped selling DFH products in approximately 2015 when it ran out of warehoused inventory, specifically DFH cancelled its contractual relationship with Goiriz after it discovered why Goiriz' login credentials were being used for – namely the purchase of unauthorized products from DFH.

113.    Upon information and belief, TP Wellness stored DFH products in warehousing space that was not in compliance with applicable FDA regulations.

114.    Upon further information and belief, TP Wellness offered for sale and sold certain DFH products that were expired and/or sold well past their approved manufacturing date.

115.    TP Wellness acquired DFH products from other QHP Defendants (after Goiriz was terminated as a DFH QHP), for the eventual sale to Palenzuela, Paquette and/or Fruitful Longevity.

116.    In addition, TP Wellness listed and advertised DFH products on www.TotalProWellness.com as late as January 2017.

117.    As late as October 2017, TP Wellness advertised DFH products for sale on various e-commerce sites, including on Pinterest.com:



118.    All of the foregoing actions were a carefully orchestrated plan to sell and offer for sale DFH products by TP Wellness (as well as Palenzuela, Leal, Pereira, and Fuentes).

119.    Upon information and belief, TP Wellness was still involved in procuring DFH products through the QHP Defendants (after Goiriz was terminated as a QHP) for the purpose of later offer for sale and/or sale on Amazon.com by Palenzuela, Paquette and/or Fruitful Longevity.

120.    All of the foregoing acts and omissions by TP Wellness (as well as Palenzuela, Leal, Pereira, and Fuentes) has created considerable confusion in the marketplace.

121.    TP Wellness actions (via the conduct of Palenzuela, Leal, Pereira, and Fuentes) suggests that TP Wellness is an authorized sales agent of DFH – which it is not.

122.    TP Welness has created the suggestion that it is authorized to sell DFH products and that its products (offered under the Trademarks-in-Suit and/or the Trade Dress) are authorized goods.

123.    The result has been considerable irreparable harm as well as considerable financial damages to DFH.

### Fruitful Longevity and Total Nutrition's Infringing Conduct

124.    Both Fruitful Longevity and Total Nutrition – through their owners Palenzuela and Paquette - work in the field of selling and offering for sale third-party manufactured dietary supplements and related health products.

125.    After forming Total Nutrition as a Florida corporation in May 2012, both Paquette and Palenzuela opened their first brick-and-mortar location in the Mary Brickell Village Shops on July 28, 2012 – as shown by the following Facebook post by Total Nutrition on July 16, 2012:



126.    On May 23, 2012, Palenzuela (on behalf of himself as well as Paquette) registered the domain name www.TotalNutritionMiami.com with Registrar GoDaddy (the "Total Nutrition Website") for purposes of offering dietary and nutritional supplements online.  This is confirmed through review of the WHOIS information available at WHOIS.GoDaddy.com:

**WHOIS search results**

Domain Name: TOTALNUTRITIONMIAMI.COM
Registry Domain ID: 1722366558_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2017-05-24T15:53:20Z
Creation Date: 2012-05-23T23:44:39Z
Registrar Registration Expiration Date: 2018-05-23T23:44:39Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited
http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited
http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited
http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited
http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: andy PALENZUELA
Registrant Organization:
Registrant Street: 20522 Larino loop
Registrant City: estero
Registrant State/Province: Florida
Registrant Postal Code: 33928
Registrant Country: US
Registrant Phone: (239) 233-4608
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: ypalenz@gmail.com
Registry Admin ID:
Admin Name: andy PALENZUELA

*See,* **Exhibit J**.

127.     According to publicly available information (including via Archive.org), both

Paquette and Palenzuela, as the owners of the Total Nutrition Website, launched the website by

early November 2012, and began offering a variety of third-party sourced dietary and nutritional

supplements, not only to local customers, but also nationwide (including international customers).

As such, by late 2012, Enterprise Defendants had launched an international sales program for its

nutritional supplements.

128.     Paquette and Palenzuela decided to form Health Powerhouse approximately six

months after the launch of TP Wellness.   The focus of Health Powerhouse was to offer DFH

products, sourced by TP Wellness, through Amazon.com.

129.     On July 2014, both Paquette and Palenzuela formed and organized Health

Powerhouse with the State of Florida as an affiliate company to Total Nutrition for purposes of advancing and increasing their on-line sales, including through third-party e-commerce sites such as Amazon.com.

130.    Moreover, the couple opted to use Paquette's maiden name (despite being the wife of Palenzuela) as the sole manager of Fruitful Longevity with the state of Florida.

131.    Proximate the late 2014 timeframe, Health Powerhouse – through the actions, control, and knowledge of Paquette and Palenzuela – launched the Health Powerhouse Storefront for the purpose of selling a variety of products, including certain products that include the Trademarks-in-Suit as well as the DFH Trade Dress:



*See*, **Exhibit K**

132.    On information and belief, Health Powerhouse was formed to escalate and advance Enterprise Defendants' on-line sales without publicly showing how it was an affiliate to Total Nutrition.  Put another way, both Paquette and Palenzuela formed Health Powerhouse to allow Enterprise Defendants to sell dietary supplements without third-parties knowing they were warehoused, sourced, processed, or sold by Total Nutrition (and/or its owners).

133.     After formation of Health Powerhouse and the related launch of the Health Powerhouse Storefront on Amazon.com – both Paquette and Palenzuela continued to grow, with the addition of a second brick-and-mortar location in December 2014 at 15436 SW 88th Street, Miami, Florida 33196 in the Miami suburb of Kendall.

134.     Approximately a year after opening the second physical location for Total Nutrition, Enterprise Defendants opened a third brick-and-mortar location in the Coral Gables suburb of Miami at 5612 Sunset Drive, Coral Gables, Florida 33143

135.     Upon information and belief, Total Nutrition – through the direction and control of Paquette and Palenzuela – opened a fourth location in the South Beach area of Miami at 427 Washington Ave., Miami Beach, Florida 33139.

136.     Upon establishing four separate brick-and-mortar locations, Enterprise Defendants have sold (and upon information and belief continue to offer for sale) dietary supplements through these locations that bear the three Trademarks-in-Suit as well as packaging that appears to be an exact copy of the DFH Trade Dress – Enterprise Defendants have also sold through the Health Powerhouse Storefront on Amazon.com:



*See,* **Exhibit L**

137.    Upon information and belief, they are sourcing DFH Products through third-parties and then warehousing those in Enterprise Defendants' Miami area located warehouse (including the TP Wellness warehouse).   When a customer places an order via the Health Powerhouse Storefront – those implicated products are then shipped to customers from the Miami area warehouse.  In addition, when customers request DFH Products at one of the four brick-and-mortar locations of Total Fitness – they are likewise supplied from the Miami area warehouse.

138.    All orders of DFH Products – whether they are sold through the Health Powerhouse Storefront or at one of the four Total Nutrition stores – are processed and approved by Paquette and Palenzuela as they are both knowingly selling DFH Products (or supplements that bear slavishly identical indicia).

139.    Examples of DFH Products that have been marketed and sold by Health Powerhouse Storefront or at one of the four Total Nutrition stores (through the control and authority of Paquette and Palenzuela) – which were also previously sold prior to that by TP Wellness, include the following (the "Infringing Products"):



| Magnesium Buffered Chelate TRAACS Minerals | Twice Daily Multi TRAACS Amino Acid Chelated Minerals | Thyroid Synergy TRAACS Chelated Zinc Adaptogenic Ginseng | Inflammatone – Inflammation Relief Support Formula |
|---|---|---|---|
| 240 Capsules | 120 Capsules | 120 Capsules | 120 Capsules |

True and correct copies of these dietary supplement product offerings available on Amazon are shown at **Exhibit M** hereto.

140.    As shown by the foregoing, Enterprise Defendants are using slavish and exact copies of the three Trademarks-in-Suit, as well as using the exact same DFH Trade Dress in offering for sale and selling products on-line – even though Enterprise Defendants are not authorized to sell DFH Products (and likewise these products are not sourced from DFH).

141.    Enterprise Defendants (first TP Wellness, and then later Fruitful Longevity and/or Total Nutrition) are obtaining older manufactured DFH Products from QHPs in violation of each QHP's RxDFHend Agreements – and selling these products for at or near the DFH pricing offered on the DFH Website and/or the DFH Amazon Store:



| Offering from the DFH Website | Offering from the Health Powerhouse Storefront |
|---|---|

142.     Customers who have purchased Infringing Products sold by Enterprise Defendants on-line via Amazon, as well as at their four brick-and-mortar locations throughout Miami, have complained regarding the quality of these offerings, including that the bottles were not properly stored and maintained (resulting in pills being stuck together), the products were shipped after they expired, as well as that the packaging was actually opened prior to shipment (*i.e.*, not sealed):

⭐☆☆☆☆ " *This is the second time my pills have arrived stuck together.* "

By Lynda H. Smith on September 12, 2017.

⭐☆☆☆☆ " *Didn't come with a cold pack like it was supposed to. Will not order this again. Tried 3 times. Never had a cold pack. No good to anyone.* "

By Jennifer Mayhugh on October 4, 2017.

⭐☆☆☆☆ " *supreme B vitamins expired 1/17. I purchased these vitamins 7/7/17. I was sold expired vitamins.* "

By latte on September 8, 2017.

**Examples of Consumer Complaints on Amazon.com**

Attached as **Exhibit N** are true and correct copies of additional consumer complains made on Amazon.com.

143.     As shown by the foregoing consumer complaints, Enterprise Defendants' actions of offering for sale and selling these slavish copies of the DFH Products – including exact copies

37

of the DFH Trade Dress – all risks considerable confusion with DFH's valuable and exclusive rights as to both the DFH Trade Dress as well as the three Trademarks-in-Suit.

144.     Moreover, the foregoing constitutes clear acts of unfair competition, which risks considerable consumer confusion in that potential, or actual, customers of DFH may believe that Enterprise Defendants' product offerings, both on-line and at the four brick-and-mortar locations, are affiliated, sponsored, endorsed or related to DFH and/or that Enterprise Defendants are QHPs who have executed and become part of the necessary agreements to carry DFH's high quality products.

145.     DFH has no available remedy at law, and as such there is a risk of irreparable harm unless Enterprise Defendants improper and unauthorized actions are stopped.

146.     This is especially true in that DFH has previously sent written demand letters directed to Enterprise Defendants outlining the foregoing which has not resulted in Enterprise Defendants acknowledging their improper actions and ceasing sales.

147.     After TP Wellness was effectually shut down by DFH (for violation of its agreement with Goiriz), TP Wellness later agreed to contribute logistical support to Health Powerhouse, Paquette, and Palenzuela, including by warehousing goods; contributing labor to receive and process goods, facilitate shipping, process orders.

**The Role and Actions of the QHP Defendants**

148.     TP Wellness processes all or nearly all Health Powerhouse orders for Amazon.com – including through the assistance and help of Palenzuela, Leal, Pereira, and Fuentes.

149.     TP Wellness (including specifically Palenzuela, Leal, Pereira, and Fuentes) identify and engage QHPs as part of their scheme to unlawfully and improperly obtain goods from DFH.

150.     As previously mentioned, Enterprise Defendants find QHPs that are otherwise

eligible. They use the QHP's healthcare practitioner credentials to create and establish fraudulent accounts with various third party dietary supplement makers, including DFH.

151.    Enterprise Defendants entered into this form of arrangement with each of the QHP Defendants.

152.    To motivate these improper and unauthorized actions, the Enterprise Defendants have offered the QHP Defendants monthly payments ranging between $500.00 to $1000.00 simply to use each of the QHP Defendants professional medical credentials for purposes of opening various accounts on-line with DFH to order and obtain DFH products.

153.    Using the credit cards of Health Powerhouse, Leal, Palenzuela and Enterprise Defendants then use the co-conspiring QHP Defendants' fraudulent DFH account to order DFH goods that Enterprise Defendants could not otherwise acquire.

154.    In the course of establishing these QHP accounts, logging into and using the QHP Defendants' accounts, and ordering goods from DFH, Enterprise Defendants fraudulently misrepresent themselves as the QHP(s), *i.e.*, as persons authorized and licensed to order DFH goods. QHP Defendants aid and acquiesce this fraud.

155.    Enterprise Defendants and QHP Defendants know the Enterprise Defendants are not the listed QHP(s) in the course of this conduct.

156.    QHP Defendants knew that Enterprise Defendants were not authorized to order DFH products or use the QHP Defendants' DFH accounts to order those goods. QHP Defendants had this knowledge because they were subject to RxDFHend Agreements, like Goiriz. These agreements obligated QHP Defendants to refrain unauthorized parties from using their DFH accounts and explained the restrictions in detail. QHP Defendants agreed to those restrictions and policies.

157.     Enterprise Defendants use QHP Defendants' accounts in order to defraud DFH, and to knowingly and fraudulently induce DFH to sell and ship goods to a purchaser that DFH is led to believe is the authorized and licensed QHP, when, in fact it is not.

158.     Instead, Enterprise Defendants and QHP Defendants cause DFH's goods to be shipped across state lines and through interstate commerce to Enterprise Defendants, directly. In other circumstances, Enterprise Defendants use the fraudulent QHP accounts to order goods to the co-conspiring QHP Defendants who then further the conspiracy by re-directing the goods to Enterprise Defendants in Florida.

159.     Enterprise Defendants and QHP Defendants intended for DFH to believe the misrepresentations of this scheme, and to be induced into selling and shipping goods to Enterprise Defendants.

160.     Enterprise Defendants use the accounts of TP Wellness to issue monthly payments to the co-conspiring QHPs who permit TP Wellness and Health Powerhouse to purchase DFH goods using the fraudulent accounts. These monthly payments range from $700 to $1,000 per month to the QHP Defendants.

161.     TP Wellness receives and warehouses all of the illicit goods from the co-conspirator QHPs, and "sells" the goods to Health Powerhouse at a mark-up of 20-40%.

**Way of Life and Finn's Role with Fruitful Longevity**

162.     In order to increase sales for both TP Wellness as well as Fruitful Longevity, there was a discussion in late 2015 between Palenzuela, Leal, and Fuentes regarding the need for certain ancillary health products – to help bolster sales.

163.     It was decided that the three would team up with pal Finn (whom they knew from college) for purposes of making a pill dispenser to be used for various dietary supplements,

specifically for DFH products.

164.    In early 2016, Way of Life was formed listing as managers Palenzuela, Leal, Fuentes and Finn.   Finn assisted in the selection, sourcing and acquisition of the underlying pill dispenser for later sale through Fruitful Longevity.

165.    What is more, Finn was well aware that Fruitful Longevity was selling DFH products, acquired from the QHP Defendants – and that the purpose of the underlying pill dispensers was to increase sales of DFH products by Fruitful Longevity (and thus TP Wellness who has engaged in sourcing and/or warehousing such DFH products).

166.    In short, Way of Life functions as an affiliate of both Fruitful Longevity and TP Wellness to provide ancillary products – packaged along with DFH Products – to increase sales and/or interest in the Enterprise Defendants sale of unauthorized and improperly sourced DFH products.

167.    As such, both Finn and Way of Life are active participants – along with the other Enterprise Defendants – in the advancement of sales of infringing DFH products.

168.    Both Finn and Way of Life have assisted and/or contributed to the suggestion that the Enterprise Defendants are endorsed, licensed or approved to sell DFH products.

169.    Based upon the foregoing acts and omissions, Finn and Way of Life have caused irreparable harm and damages to DFH.

## COUNT I

## TRADEMARK COUNTERFEITING IN VIOLATION OF SECTIONS 32 AND 34(d)(1)(B) OF THE LANHAM ACT

(Enterprise Defendants Only)

170.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

171.    Count I is an action sounding in counterfeiting directed towards all Enterprise Defendants.

172.    Enterprise Defendants' aforesaid use of the Trademarks-in-Suit on the packaging of dietary supplements that are not genuine DFH Products constitutes use of spurious marks identical with, or substantially indistinguishable from, the Trademarks-in-Suit, which are federally registered in connection with dietary supplements for human consumption.

173.    Enterprise Defendants' acts have caused and/or are likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Enterprise Defendants' dietary supplement offerings which are not endorsed and/or approved sales by DFH.

174.    DFH only allows third-parties who are part of the DFH Network to offer for sale and sell DFH Products bearing the Trademarks-in-Suit, which require certain levels of training as well as review of the underlying seller's professional licensure in the medical community.

175.    Enterprise Defendants, to the knowledge and belief of DFH, are not members of the DFH Network, nor associated or related to any entities within the DFH Network.  Instead, the Enterprise Defendants improperly source products from the QHP Defendants, through a clandestine program of paying these QHPs for use of their credentials to improperly source DFH Products.

176.    Enterprise Defendants are advertising and promoting dietary and nutritional supplements that include and/or display Plaintiff's imagery which include the Trademarks-in-Suit.

177.    Upon information and belief, Enterprise Defendants are ultimately selling unrelated third-party dietary supplements containing graphical duplicates of DFH's product label to sell late manufactured and/or inferior quality dietary supplements causing consumers considerable health risks and problems, as suggested by the following complaint made on Amazon.com from the

Health Powerhouse Storefront:

By Shannon on April 12, 2015
Verified Purchase

10:00am Central time: I'm not sure how to rate this product... I was initially ordering it through my Holistic Health Practitioner until he moved. So now I'm buying the products he recommended on here until I find another HHP. This is my first time purchasing this product off of here from this vendor and the bottle looks different along with the potent smell of the supplements, which is different. It scares me to think that this isn't a legit product... I think I'm going to send it back... Just seems weird. 11:30am Central time: I'm returning this product. I took this for the 2nd day in a row and I've been feeling sick. Something isn't right. I have to assume this product isn't legit since I've been taking the SAME product through my HHP. Only difference now is who I ordered it from.

178.   Based upon customer reviews on Amazon.com it appears, upon information and belief, that Enterprise Defendants are opening sealed (but expired) DFH Products, removing a portion of those pills (and then replacing those DFH capsules into other bottles that included mimicked DFH labels to give the appearance of the DFH labeling) and then placing empty pills into both the DFH bottles as well as the new fake bottles:

### Customer Review

**Expiration date was cut from bottle sticker. Didn't notice until they went bad only 9 months later.**
By Sandreddia on October 4, 2016
Size: 120    Package Type: Standard Packaging    Verified Purchase

Watch the expiration date! The expiration date has been cut from the bottle....didn't notice this when I first received them in January. I only noticed now because only 9 months later and they appear to have already gone bad...they smell bad and are very discolored. I still have about half left and will now just have to toss them. That means about $20 bucks thrown in the trash.

**empty capsules**
By Amazon Customer on November 23, 2015
Verified Purchase

There were four empty capsules in the bottle! Guess I really bought 116 capsules.

### Customer Review

**Three Stars**
By BetsyGunter1980 on August 11, 2017
Package Type: Standard Packaging    Verified Purchase

The seal was broken when it arrived :(

179.   Enterprise Defendants' aforementioned improper and unauthorized acts constitute trademark counterfeiting of the Trademarks-in-Suit in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1116(d)(1)(B).

180.     Enterprise Defendants' acts have greatly and irreparably damaged DFH and will continue to damage DFH unless restrained by the Court; wherefore, DFH is without an adequate remedy at law.

181.     Accordingly, DFH is entitled to, among other relief, an order permanently enjoining and restraining Enterprise Defendants from using the Trademarks-in-Suit in connection with the sale of non-genuine DFH Products as well as any expired DFH Products.

## COUNT II

## INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATIONS
## 15 U.S.C. §1114(1)

(Enterprise Defendants Only)

182.     Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

183.     Count II is an action for willful infringement of DFH's three federally registered trademarks under 15 U.S.C. §1114(1) directed to all Enterprise Defendants.

184.      As previously addressed in detail above, DFH maintains exclusive, strong and unencumbered rights to the distinctive mark **DESIGNS FOR HEALTH** as well as the following related logo in International Class 5 for dietary supplements for human consumption:



185.     DFH's three Trademarks-in-Suit, duly registered before the USPTO, are conclusive evidence of the validity and enforceability of DFH's rights in the trade name **DESIGNS FOR HEALTH** as well as its related logo in the field of dietary supplements.

186.   What is more, all three of the Trademarks-in-Suit are incontestable.

187.   Enterprise Defendants – through their Health Powerhouse Storefront – employ the following product packaging image containing DFH's Trademarks-in-Suit to sell unauthorized dietary supplements on Amazon.com:



188.   Enterprise Defendants' wrongful use of the three Trademarks-in-Suit in conjunction with offering an authorized and unendorsed line of dietary supplements – without the approval or consent of DFH – in the same industry, to the same target group of customers, is likely to cause confusion, mistake or deception as to source, sponsorship, affiliation, or authorization by DFH or alternatively, to destroy the origin-identifying function of DFH's three aforementioned registered trademarks.

189.   DFH has further been damaged by the Enterprises Defendants'  bundling of other related health related products, including Finn and/or Way of Life's pill dispenser product along

with DFH products, for purposes of advertising, marketing, and sale of such pill dispensers on-line.

190.    As a proximate result of Enterprise Defendants' actions, DFH has suffered, and will continue to suffer, damages to its business, reputation, and goodwill, and is entitled to recover damages for this injury.

191.    Enterprise Defendants' willful conduct will continue to cause irreparable harm to DFH unless Enterprise Defendants are restrained and enjoined from further unlawful conduct.

192.    DFH's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for the continued acts of infringement alleged herein.

193.    The foregoing acts of infringement by Enterprise Defendants in appropriating the mark DESIGNS FOR HEALTH and the related logo has been, and continues to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C §1117.

194.    DFH is entitled to a permanent injunction against Enterprise Defendants, as well as all other monetary remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

## COUNT III

### FEDERAL UNFAIR COMPETITION – PASSING OFF
### 15 U.S.C. §1125(a)

(Enterprise Defendants Only)

195.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169)  as if fully set forth herein.

196.    Count III is an action for Federal unfair competition under 15 U.S.C. §1125(a) directed to all Enterprise Defendants regarding the unauthorized use of DFH's **DESIGNS FOR**

**HEALTH** trademark.

197.    DFH maintains exclusive, strong and un-encumbered rights to the trade name **DESIGNS FOR HEALTH** based upon a quarter century's use in interstate commerce.  Moreover, for the last 18 years alone, DFH has obtained some $400,000,000 in revenues based on sales of high quality dietary supplements that bear the name **DESIGNS FOR HEALTH.**  As such, that mark is particularly strong, well-recognized and connotes considerable goodwill to consumers who purchase nutritional supplements.

198.    Enterprise Defendants have, knowingly and intentionally, used the name **DESIGNS FOR HEALTH** (the "Infringing Name") in their on-line advertising, product packaging, marketing, signage, and on related items in interstate commerce for the purposes of offering dietary supplements for human consumption.

199.    Enterprise Defendants' use of the Infringing Name suggests to relevant and prospective customers seeking dietary supplements that Enterprise Defendants, or at the very least the supplements which Enterprise Defendants carry and sell, are affiliated, sponsored, endorsed, or related to DFH and its related rights to the trade name **DESIGNS FOR HEALTH.**

200.    Enterprise Defendants' advertising and marketing of dietary supplements – including through the Health Powerhouse Storefront – all leads to the suggestion that there is some affiliation, endorsement, license or relationship between Enterprise Defendants and DFH.

201.    What is more, Enterprise Defendants' actions of selling dietary supplements that bear the **DESIGNS FOR HEALTH** mark via (a) the Total Prowellness Website, (b) TP Wellnesses' Amazon.com storefront, and (c) the Health Powerhouse Storefront (amongst on-line locations) suggests that Enterprise Defendants are a QHP that has entered into an RxDFHend Agreement with DHF and/or that Enterprise Defendants are part of the DHF Network, which is

not the case.

202.    As such, Enterprise Defendants' improper and unauthorized use of the trade name **DESIGNS FOR HEALTH** for the sale of dietary supplements is likely to cause, has caused, and will continue to cause, confusion among actual and/or potential customers of DFH as to the origin, sponsorship or approval of Enterprise Defendants dietary supplements.

203.    DFH has further been damaged by the Enterprise Defendants' bundling of other related health related products, including Finn and/or Way of Life's pill dispenser product along with DFH products, for purposes of advertising, marketing, and sale of such pill dispensers on-line.

204.    As such, Enterprise Defendants' improper actions are in violation of 15 U.S.C. §1225(a) in that Enterprise Defendants have used and continue to use, in relation to commercial activities, a false designation of origin, or a false or misleading description that is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection, or association of Enterprise Defendants with DFH.

205.    As a result of the foregoing, DFH has suffered, and will continue to suffer, irreparable harm as a proximate and direct result of the foregoing acts of unfair competition caused by Enterprise Defendants.

206.    Likewise, DFH shall suffer additional irreparable harm unless and until Enterprise Defendants are enjoined by the Court from continuing those acts, which constitute unfair competition.

207.    DFH has no adequate remedy at law.

208.    Upon information and belief, Enterprise Defendants' acts of unfair competition are willful and this is an exceptional case within the meaning of 15 U.S.C. 1117.

## COUNT IV

### TRADE DRESS INFRINGEMENT OF PRODUCT PACKAGING
### 15 U.S.C. §1125(a)

(Enterprise Defendants Only)

209.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169)  as if fully set forth herein.

210.    Count IV is an action for trade dress infringement under 15 U.S.C. §1125(a) regarding Enterprise Defendants unauthorized use of the DFH Trade Dress.

211.    Throughout the last six years, consumers of dietary supplements and related health products have come to recognize the distinctive DFH Trade Dress as a source identifier of the DFH Products.

212.    As such, the DFH Trade Dress is both distinctive and strong.

213.    Enterprise Defendants have adopted and employed imagery of dietary supplement product packaging that mimics the appearance of the DFH Trade Dress for purposes of marketing, offering for sale and selling dietary supplements under the representation and suggestion that they are sourced and/or authorized by DFH.

214.    Accordingly, Enterprise Defendants' actions of placing imagery of dietary supplements that include the DFH Trade Dress on (a) the Total Prowellness Website, (b) TP Wellnesses' Amazon.com storefront, and (c) the Health Powerhouse Storefront (amongst on-line locations) is likely to deceive, confuse and mislead purchasers and prospective purchasers to believe that those dietary supplements emanate from and/or are authorized or approved by DFH.

215.    Moreover, Enterprise Defendants' actions suggest that they are part of the DFH Network and/or are educated and trained for the purpose of professionally distributing DFH Products – when such is not the case.

216.    By using the exact imagery of DFH's products – which includes an exact or spurious replica of the DFH product packaging – Enterprise Defendants have employed the DFH Trade Dress to capitalize on the goodwill, notoriety and product quality association with DFH and the DFH Products.  As a result, Enterprise Defendants seek to capitalize upon and profit from the resulting consumer confusion created by the aforementioned actions and misconduct.

217.    Enterprise Defendants' sale of expired DFH Products, that are created by placing portions of DFH Products into replica bottles and then reselling partially filled DFH products, risks posing considerable risk to consumers who unknowingly buy products from Enterprise Defendants – including from their warehouse and/or brick-and-mortar locations throughout Miami.

218.    DFH has further been damaged by the Enterprise Defendants' bundling of other related health related products, including Finn and/or Way of Life's pill dispenser product along with DFH products, for purposes of advertising, marketing, and sale of such pill dispensers on-line.

219.    As a result, Enterprise Defendants' conduct may result in considerable loss of goodwill and reputation to both DFH and its DFH Products.  As such, this is an exceptional case.

220.    Unless enjoined, Enterprise Defendants' continued acts of infringement regarding these sales of dietary supplements risk irreparable injury to DFH, such that DFH has no adequate remedy at law.

221.    Enterprise Defendants' aforementioned conduct constitutes trade dress infringement actionable under the Section 1125(a) of the Lanham Act.

222.    DFH has been harmed by Enterprise Defendants' conduct as alleged herein in an amount that is yet unknown.

## COUNT V

## FLORIDA COMMON LAW UNFAIR COMPETITION

(Enterprise Defendants Only)

223.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

224.    Count V is an action for unfair competition under the laws of the state of Florida directed to all Enterprise Defendants.

225.    Enterprise Defendants' aforesaid activities regarding the advertising, marketing, offer for sale and sale of dietary supplements through (a) the Total Prowellness Website, (b) TP Wellnesses' Amazon.com storefront, and (c) the Health Powerhouse Storefront (amongst on-line locations) constitutes unfair competition and an infringement of DFH's common law rights in the mark **DESIGNS FOR HEALTH.**

226.    DFH has been damaged by the Enterprise Defendants' knowing and willful acts of unfair competition including but not limited to their adoption and continued use of the mark **DESIGNS FOR HEALTH** with regards to product packaging relating to dietary supplements.

227.    DFH has further been damaged by the Enterprises Defenses' bundling of other related health related products, including Finn and/or Way of Life's pill dispenser product along with DFH products, for purposes of advertising, marketing, and sale of such pill dispensers on-line.

228.    These acts of common law unfair competition have caused and, unless enjoined, will continue to cause DFH irreparable harm.

229.    DFH has no adequate remedy at law.

## COUNT VI

## BREACH OF CONTRACT

(QHP Defendants Only)

230.     Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

231.     Count VI is an action for breach of contract against each of the QHP Defendants.

232.     Each of the QHP Defendants executed a RxDFHend Agreement with DFH.

233.     The QHP Defendants' RxDFHend Agreements are substantively identical with regard to the terms breached.

234.     Each of the QHP Defendants, by engaging in this scheme with Enterprise Defendants, has breached the following terms of the RxDFHend Agreements:

a.     § 2. "QHP agrees to sell, recommend and administer DFH Products to end users strictly in accordance with all applicable laws, regulatory requirements and the applicable medical standard of care." The QHP Defendants breached this provision by turning over DFH Products to the Enterprise Defendants, who then engaged in an unauthorized scheme that infringed upon DFH's trademarks, trade name, and trade dress. In so doing, QHP Defendants abdicated any ability to administer the DFH Products upon transferring title to the Florida Defendants.

b. § 3. QHP Defendants agreed "[o]nly QHP and QHP authorized agents are eligible to access and use the Account ("Authorized Users") to purchase DFH Products." QHP Defendants materially breached that provision by selling access to the Account to the Enterprise Defendants.

c. § 3. QHP Defendants "shall not share the Account or permit its use by any person except for Authorized Users." You do not know who used the Account, and unless you contend Enterprise Defendants are Authorized Users, you breached this provision, as well.

d. § 3. QHP Defendants were to "use reasonable commercial efforts to prevent unauthorized use of the Account" and were to "promptly notify … DFH in writing, if [you] know[ ] or suspect[ ] that [your] Account has been used by anyone other than Authorized Users." QHP Defendants breached this provision.

e. § 3. QHP Defendants were obligated to "assist … DFH in identifying unauthorized users of the Account who purchase DFH Products…."

f. § 4(a). QHP Defendants breached their obligation to "sell or provide DFH Products only to end users of DFH Products who are under QHP's care, and will not supply DFH Products to distributors or resellers." QHP Defendants breached both aspects of this warranty and agreement by selling to Enterprise Defendants, who have admitted they are resellers of the DFH Products.

g. § 4(b). QHP Defendants breached their agreement that they "shall not list, offer for sale, sell or distribute any DFH Products via any third-party-facilitated online retail or online auction website (including … amazon.com….)" To that

end, QHP Defendants expressly agreed "this prohibition is necessary to ensure patient/consumer safety and the integrity of the DFH Products." § 4(b).

h.  § 4(b). QHP Defendants breached the term requiring that sales on practitioner websites "must conspicuously state the name, address and phone number" of the QHP "whose credentials were submitted with respect to the Account…." As QHP Defendants' names are all obscured from the Enterprise Defendants' websites and Amazon store, QHP Defendants materially breached the RxDFHend Agreement.

i.  § 4(g). For the QHP Defendants that are pharmacists, they further breached section 4(g), which mandates that where a QHP is a licensed pharmacist, the QHP Defendant agreed to "keep all DFH Products behind the counter and out of QHP's customers' view." These QHP Defendants breached this term by delivering the DFH Products to the Enterprise Defendants, at which point the QHP Defendants lost control of the placement and security of the DFH Products.

235.  The foregoing terms were material the RxDFHend Agreements.

236.  QHP Defendants' breaches damaged DFH.

237.  Under the RxDFHend Agreement, DFH is entitled to liquidated damages from QHP Defendants, and seeks that relief here.

## COUNT VII

## FRAUD

(all Defendants)

238.  Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through

one-hundred sixty-nine (169) as if fully set forth herein.

239.    Enterprise Defendants defrauded DFH through their scheme of bribing QHPs, obtaining QHP passwords to set up and/or control the QHPs' accounts with DFH.

240.    Enterprise Defendants used subterfuge to gain access to DFH Products. As alleged here, Enterprise Defendants intended to access DFH Accounts and order DFH Products without detection by DFH, posing as QHP Defendants.

241.    It was Enterprise Defendants' intention that their identities would be concealed from DFH so they could engage in Internet sales of DFH Products without losing their sources of DFH Products, and thereby avoid DFH's efforts to police and restrict the reselling of DFH Products.

242.    It was QHP Defendants' intention to permit Enterprise Defendants to misrepresent themselves as the QHP Defendants. This permitted the QHP Defendants to collect bribes from the Enterprise Defendants and to have cover and distance from the unauthorized and unlicensed re-selling of DFH Products.

243.    Each time Enterprise Defendants accessed or used the QHP Defendants' DFH Accounts or identities, Defendants made false statements to DFH. These statements are commensurate with dates and times of account log-ins and orders placed. Each such interaction misrepresented the identity of the Defendants and their authorization to purchase DFH Products. Enterprise Defendants are associated with each login and order from a QHP Defendants' account. Each QHP Defendant is associated with the particular logins and orders placed from their DFH Account. These transactions are too numerous to list in this pleading.

244.    DFH reasonably relied on the misrepresentations, mistaking the orders to be authentic orders from QHP Defendants, who were otherwise party to agreements that limited their

access and reselling activities.

245.     This fraud damaged DFH, including because DFH lost sales and must police its brand, protect its responsible and contract-abiding QHPs, and otherwise maintain its obligations to its authorized resellers and distributors.

## COUNT VIII

## CIVIL CONSPIRACY

(all Defendants)

246.     Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169), as well as Counts I through V, and Count VII in their entirety, as if fully set forth herein.

247.     This civil conspiracy is based upon six underlying torts, set out in Counts I through V and VII.

248.     This conspiracy involved all of Enterprise Defendants and QHP Defendants.

249.     Together, Enterprise Defendants and QHP Defendants conspired to do a lawful act by unlawful means. Specifically, Enterprise Defendants concocted a scheme that would permit them to unlawfully gain access to the restricted sourcing of DFH Products, to sell the DFH Products without authorization or a license, and to obscure their sourcing from DFH.

250.     Enterprise Defendants committed overt acts including planning and organizing the scheme, unlawfully accessing DFH Accounts, ordering DFH Products, reselling DFH Products in unlawful modes, and paying bribes to the QHP Defendants.

251.     QHP Defendants committed overt acts including permitting unlawful, unauthorized access to their DFH Accounts, abdicating control over the distribution and sale of DFH Products, and accepting bribes from Enterprise Defendants to do so.

252. This civil conspiracy damaged DFH, which has lost sales and has been specially harmed by lost profits, must work to appease its abiding QHPs, and must control and police its brand and marks.

## COUNT IX

## CIVIL AIDING AND ABETTING LANHAM ACT VIOLATIONS

### (QHP Defendants Only)

253. Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as well as Counts I through IV, in their entirety, as if fully set forth herein.

254. This aiding and abetting claim regards QHP Defendants' aiding and abetting that facilitated all four claims brought under the Lanham Act, Counts I through IV.

255. For the reasons and allegations of Counts I through IV, Enterprise Defendants infringed upon DFH's Trademarks-In-Suit and otherwise violated the Lanham Act.

256. By taking bribes and volunteering to source DFH Products for the Enterprise Defendants' scheme, and permitting Enterprise Defendants to use their DFH Accounts, each of the QHP Defendants voluntarily aided and abetted the Enterprise Defendants' wrong-doing.

257. QHP Defendants knew and understood they were aiding and abetting this wrong-doing, including because they had actual knowledge of the constraints on their license and right to resell DFH Products from the RxDFHend Agreement.

258. QHP Defendants, for their cooperation with Enterprise Defendants, gave substantial assistance and encouragement to Enterprise Defendants.

## COUNT X

## CONTRACTUAL INDEMNIFICATION

(QHP Defendants Only)

259. Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

260. Under section 3 of the RxDFHend Agreement, QHP Defendants stipulated that they are "responsible for all orders placed on the [DFH] Account, whether by Authorized Users or others, and for compliance by all such persons with the terms of this Agreement."

261. In section 1 of the RxDFHend Agreement, QHP Defendants agreed "that each person or entity handling DFH Products purchased through an Account acts as the agent of QHP for purposes of this Agreement and that any such agent's failure to comply with QHP's obligations hereunder shall be directly attributed to QHP."

262. Under section 7 of the RxDFHend Agreement, QHP Defendants agreed and stipulated to "hold harmless, defend and indemnify DFH … from and against any and all … losses … damages, injuries (including … property damage), expenses (including attorney fees) … resulting from … (ii) violation of applicable law by QHP or its employees, agents, contractors, subcontractors or consultants."

263. For the reasons summarized above, DFH has suffered losses, damages, injuries, damage to its trademarks (i.e., property), and has incurred attorney fees resulting from QHP Defendants' aiding and abetting, and conspiring with, the Enterprise Defendants.

264. The wrong-doing of the Enterprise Defendants, including using the QHP Defendants' DFH accounts, rendered the Enterprise Defendants agents of the QHP Defendants.

265. As such, QHP Defendants are obligated to indemnify DFH for any losses, damages,

injuries, damage to its trademarks, and attorneys' fees for the Enterprise Defendants' violations of applicable law, including the Lanham Act.

## COUNT XI

## COMMON LAW INDEMNIFICATION

(QHP Defendants Only)

266.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

267.    Under the circumstances alleged, DFH is without fault. The QHP Defendants permitted the Enterprise Defendants to circumvent the restrictions of the RxDFHend Agreements, to obtain and resell DFH Products without supervision or any semblance of product or brand control, including over the Internet. DFH could not, and did not, know of these breaches until commencing this action and gaining discovery from Enterprise Defendants.

268.    Aside from their direct, contractual liability to DFH, QHP Defendants are vicariously liable for the independent harm and wrong-doing of Enterprise Defendants.

269.    DFH and QHP Defendants had a special relationship that gives rise to this vicarious liability. QHP Defendants enjoyed limited, exclusive access to DFH Products and were permitted to operate and sell in a controlled and exclusive market for DFH Products.

## COUNT XII

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

(all Defendants)

270.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169) as if fully set forth herein.

271.    Defendants' scheme to acquire and resell DFH Products outside of the authorized

and licensed framework was both a deceptive act, as well as an unfair practice.

272.    The scheme was deceptive because it involved misrepresentations of identity and authority to source the DFH Products.

273.    The scheme was unfair because its goal was to avoid the Internet sales restrictions and other licensing restrictions, and to enable non-QHPs to compete with DFH's lawful, contract-abiding QHPs, thus disrupting DFH's licensing regime and licensee network.

274.    Defendants' acts all contributed to these practices, and thus all of Defendants were the legal cause of damages to DFH.

275.    DFH has suffered actual damages as a direct result of Defendants deceptive and unfair acts.

## COUNT XIII

## CIVIL AIDING AND ABETTING

(Enterprise Defendants Only)

276.    Plaintiff DFH re-alleges and incorporates by reference paragraphs one (1) through one-hundred sixty-nine (169), as well as Count VI, as if fully set forth herein.

277.    Enterprise Defendants knew of the general constraints that DFH imposed upon QHPs, and DFH's policing of the sourcing, reselling, and distribution of DFH Products.

278.    Enterprise Defendants were familiar with the RxDFHend Agreements, including because Palenzuela had reviewed the agreement and Goiriz was a party to one.

279.    For the reasons set forth above and in Count VI, the QHP Defendants breached their RxDFHend Agreements with DFH.

280.    Enterprise Defendants had actual knowledge of these breaches of contract.

281.    Enterprise Defendants gave substantial assistance to the QHP Defendants in

furtherance of the violations.

## PRAYER FOR COSTS AND ATTORNEY FEES

Plaintiff DESIGNS FOR HEALTH, INC. requests award of reasonable costs and attorney fees pursuant to the Lanham Act and Florida Statutes.

## REQUEST FOR JURY TRIAL

Plaintiff DESIGNS FOR HEALTH, INC. reiterates its request for jury trial of all matters so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiff DESIGNS FOR HEALTH, INC. requests this Honorable Court grant relief in the following manner:

a.      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing on Plaintiff's valuable trade dress (as identified above as the DFH Trade Dress) as well the three aforementioned Trademarks-in-Suit.

b.      Plaintiff be awarded all other monetary remedies available under the Lanham Act and common law, including but not limited to, penalties and fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively.

c.      Finding all Defendants jointly and severally liable.

d.      Any and all other relief that this Honorable Court deems just.

Respectfully submitted this 16th day of March, 2018.

                                      */s/ **Robert H. Thornburg**_____*
                                        Robert Thornburg
                                        Florida Bar No. 630829
       E-Mail: rthornburg@allendyer.com
       Joshua B. Spector
       Florida Bar No. 584142
       E-Mail: jspector@allendyer.com
       Cameron C. Murphy
       Florida Bar No. 125086
       E-Mail: cmurphy@allendyer.com
       ALLEN, DYER, DOPPELT
       + GILCHRIST, P.A.
       1221 Brickell Ave., Suite 2400
       Miami, Florida 33131
       Telephone:      (305) 374-8303
       Facsimile:      (305) 374-8306

       *Counsel for Plaintiff*
       *Designs for Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 16, 2018, I presented the foregoing to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a Notice of Electronic Filing to Counsel of Record to:

John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Meredith Frank Mendez
Florida Bar No. 502,235
mmendez@malloylaw.com
Jonathan R. Woodard
Florida Bar No. 96,553
jwoodard@malloylaw.com
MALLOY & MALLOY, P.L.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone:  (305) 858-8000
Facsimile:  (305) 858-0008

*Counsel for Defendants*
FRUITFUL LONGEVITY, INC.
d/b/a HEALTH POWERHOUSE,
YEP TOTAL NUTRITION, INC.,
ERICA L. PAQUETTE, and
Yerandy "ANDY" E. Palenzuela

                                                      *s/ Robert H. Thornburg*
                                                      Robert H. Thornburg